UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ENTERPRISE NATIONAL BANK,                )
                                          )
    3980 RCA Blvd., Suite 8012             )
    Palm Beach Gardens, FL 33410           )
                                          )
    Plaintiff,                             )  CIVIL ACTION NO. 1:06-cv-01344-RCL
                                          )
v.                                        )
                                          )
MIKE JOHANNS, SECRETARY,                  )
UNITED STATES DEPARTMENT OF               )
AGRICULTURE,                              )
                                          )
    1400 Independence Ave., S.W.           )
    Washington, DC 20250                   )
                                          )
    Defendant.                             )

## PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT

This lawsuit arises from a March 3, 2006 decision by the Defendant U.S. Department of Agriculture Rural Development Division, (the "Agency"). Through its decision, the Agency improperly refuses to honor its "full faith and credit" loan guarantee to Plaintiff Enterprise National Bank (the "Bank") following a December 2, 2005 final determination on the merits (the "Remand Determination") issued by a Hearing Officer of the U.S. Department of Agriculture's National Appeals Division ("NAD"). The NAD Hearing Officer found for the Bank, and against the Agency, while holding that the Bank had met its burden of proof in showing that the Agency's action in dishonoring the guarantee was erroneous. The effect of the Hearing Officer's Remand Determination was to prohibit the Agency from dishonoring the loan guarantee in any form.

Following the ruling in its favor, the Bank submitted a revised loss claim to the Agency seeking payment under the guarantee. The Agency considered the revised claim, paid a portion, and on March 3, 2006 announced that it continued to contest the balance of $3,030,000, despite the determination by the NAD Hearing Officer that the Bank had met its burden of proof in showing that the Agency's decision to deny the guarantee was erroneous.

The Agency's March 3, 2006 decision to further reduce and dishonor the Bank's loan guarantee is contrary to the plain language of the Remand Determination and blantantly violates the requirement placed on the Agency to abide by its own regulations and the rulings of the NAD.

This Court should declare that the Agency has acted without authority in denying the Bank's revised loss claim and should issue an order compelling the Agency to honor its guarantee by paying the revised loss claim in full.

In support of its Motion, the Bank submits a Memorandum of Law filed herewith.

Respectfully submitted, this 29th day of March, 2007.

_____
JOHN J. RICHARD
D.C. Bar No. 480212
JOHN M. GROSS
Georgia Bar No. 313520 (admitted *pro hac vice*)

TAYLOR, BUSCH, SLIPAKOFF & DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
(770) 434-6868 – Telephone
(770) 434-7376 – Facsimile

                                              Attorneys for Plaintiff
                                              Enterprise National Bank

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENTERPRISE NATIONAL BANK, )<br>)<br>3980 RCA Blvd., Suite 8012 )<br>Palm Beach Gardens, FL 33410 )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MIKE JOHANNS, SECRETARY, )<br>UNITED STATES DEPARTMENT OF )<br>AGRICULTURE, )<br>)<br>1400 Independence Ave., S.W. )<br>Washington, DC 20250 )<br>)<br>Defendant. ) | CIVIL ACTION NO. 1:06-cv-01344-RCL |

### CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Heather D. Graham-Oliver, Esq.
>Assistant United States Attorney
>U.S. Department of Justice
>555 4th St., N.W.
>Washington, D.C. 20530

This 29th day of March, 2007.

>John J. Richard
>D.C. Bar No. 480212

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENTERPRISE NATIONAL BANK,<br><br>   3980 RCA Blvd., Suite 8012<br>   Palm Beach Gardens, FL 33410<br><br>   Plaintiff,<br><br>v.<br><br>MIKE JOHANNS, SECRETARY,<br>UNITED STATES DEPARTMENT OF<br>AGRICULTURE,<br><br>   1400 Independence Ave., S.W.<br>   Washington, DC 20250<br><br>   Defendant. | CIVIL ACTION NO. 1:06-cv-01344-RCL |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR DECLARATORY JUDGMENT

This lawsuit arises from a March 3, 2006 decision by the Defendant U.S. Department of Agriculture Rural Development Division, (the "Agency"). Through its decision, the Agency improperly refuses to honor its "full faith and credit" loan guarantee to Plaintiff Enterprise National Bank (the "Bank") following a December 2, 2005 final determination on the merits (the "Remand Determination") issued by a Hearing Officer of the U.S. Department of Agriculture's National Appeals Division ("NAD"). The NAD Hearing Officer found for the Bank, and against the Agency, while holding that the Bank had met its burden of proof in showing that the Agency's action in dishonoring the guarantee was erroneous. The effect of the Hearing Officer's Remand Determination was to prohibit the Agency from dishonoring the loan guarantee in any form.

1

Following the ruling in its favor, the Bank submitted a revised loss claim to the Agency seeking payment under the guarantee. The Agency considered the revised claim, paid a portion, and on March 3, 2006 announced that it continued to contest the balance of $3,030,000, despite the determination by the NAD Hearing Officer that the Bank had met its burden of proof in showing that the Agency's decision to deny the guarantee was erroneous. The Agency's decision not to honor its loan guarantee after a ruling in the Bank's favor is but the latest in a series of bad faith actions undertaken by the Agency in this case.

This Court should declare that the Agency has acted without authority in denying the Bank's revised loss claim and should issue an order compelling the Agency to honor its guarantee by paying the revised loss claim in full.

## **STATEMENT OF FACTS**

Enterprise National Bank is a national banking association chartered under the laws of the United States which, among other things, makes commercial and other types of loans (Complaint ¶ 1, Answer ¶ 1). The Agency operates the Business and Industry guaranteed loan program (the "B&I" program) through which it offers guarantees of certain loans made by qualified lenders to borrowers meeting the requirements of the B&I program. (Complaint ¶¶ 5-7, Answer ¶¶ 5-7). According to the Agency's regulations and the loan documents themselves, these loan guarantees are backed by the full faith and credit of the U.S. Government. (Complaint ¶¶ 6, 8, Answer ¶¶ 6, 8). See also 7 C.F.R. § 4279.72(a).[1]

---

[1] 7 C.F.R. § 4279.72(a): *Full faith and credit*. A guarantee under this part constitutes an obligation supported by the full faith and credit of the United States and is incontestable except for fraud or misrepresentation of which a lender or holder has actual knowledge at the time it becomes such lender or holder or which a lender or holder participates in or condones. The guarantee will be unenforceable to the extent that any loss is occasioned by a provision for interest on interest. In addition, the guarantee will be unenforceable by the lender to the extent any loss is occasioned

2

Decisions by the Agency to reduce, deny, or dishonor B&I program guarantees are appealable to the NAD pursuant to 7 U.S.C. § 6996 and 7 C.F.R. § 11.3. (Complaint ¶ 9, Answer ¶ 9). Final determinations by the NAD are enforceable by the U.S. District Courts pursuant to 7 U.S.C. § 6999: "A final determination of the Division shall be reviewable and enforceable by any United States district court of competent jurisdiction in accordance with chapter 7 of Title 5." (Complaint ¶ 10, Answer ¶ 10). See also 7 C.F.R. § 11.13.

### I.  The Agency has acted in bad faith since its first introduction to the Bank and has repeatedly violated the Bank's due process rights

By withholding materially relevant information from the Bank during the loan origination process, the Agency violated in own regulations and policies and acted in bad faith even prior to loan closing.

On June 19, 1999, the Bank closed a $5 million loan to Catfish INT, Inc. ("Catfish") for the development of a catfish processing and distribution facility in Wrightsville, Georgia. (Complaint ¶ 30, Answer ¶ 30). As envisioned, the facility would process live catfish into frozen and packaged fish filets for distribution. Id.

The Agency's Georgia state office issued a B&I program guarantee for 75% of the loan on October 1, 1999. (Complaint ¶ 31, Answer ¶ 31). Catfish subsequently defaulted, and Catfish's principal, Erwin David Rabhan, was later sentenced to a significant federal prison term

---

by the violation of usury laws, negligent servicing, or failure to obtain the required security regardless of the time at which the Agency acquires knowledge thereof. Any losses occasioned will be unenforceable to the extent that loan funds are used for purposes other than those specifically approved by the Agency in its Conditional Commitment.

3

for, among other things, committing fraud upon the Bank and the Agency in connection with this loan.[2] (Complaint ¶ 32, Answer ¶ 32).

On October 20, 2003, the Agency's Georgia state office issued an adverse Agency determination letter alleging, among other things, that the Bank was deficient "in the processing and prudent monitoring of this loan," did not "comply with several covenants of the Lender's Agreement, Loan Agreement and Conditional Commitment for Guaranty," and was negligent in its performance of its obligations.[3] (Complaint ¶ 33, Answer ¶ 33; CR 1740-1757). The Agency's letter stated that the Agency "cannot' and 'will not' honor or support any part of the guarantee." (CR 1741).

On November 21, 2003, the NAD docketed the Bank's appeal of the Agency's October 20, 2003 decision. (Complaint ¶ 34, Answer ¶ 34; CR 1729-1731, 1720-1726). In connection with its appeal, the Bank filed numerous Freedom of Information Act ("FOIA") requests directed to Agency offices seeking documents and information concerning the Bank's loan, the Agency's investigation resulting in its October 2003 determination letter, and the Agency's prior dealings with Mr. Erwin David Rabhan. (CR 1548-1549, 1566-1581, 1600-1606, 1623-1625, 1665-1669). The Agency's uniform response to these requests was to delay production of clearly responsive documents, unnecessarily dispute the applicability of FOIA exemptions, and refuse to confirm that it had complied with FOIA by producing all responsive documents. The Agency's

---

[2] As revealed by the federal prosecution, the fraud perpetrated against the Bank was a complex operation in which Mr. Rabhan enlisted the criminal assistance of the general contractor in charge of constructing the catfish processing facility, Lee Jones. Mr. Jones was also sentenced by the U.S. District Court for the Southern District of Georgia for his participation in the fraud. The federal prosecution did not implicate the Bank or any of its employees in the fraud. In fact, the restitution orders entered against Messrs. Rabhan and Jones listed the Bank as a victim to whom restitution should be made.

[3] The October 20, 2003 adverse Agency determination letter was preceded by a May 22, 2003 preliminary determination by the Agency to dishonor the guarantee. (CR 1732-1739). The October 20, 2003 determination was the underlying decision on appeal before the NAD.

4

failure to comply with the NAD regulations regarding production of exculpatory and potentially exculpatory evidence violated the Bank's due process rights.

During the first NAD hearing, conducted over six days in June and August of 2004, the Bank introduced ample evidence to meet its burden of showing by a preponderance of the evidence that the Agency's October 20, 2003 determination was erroneous. The first NAD hearing was conducted in Palm Beach, Florida before NAD Hearing Officer Carlos Rodriguez.

Of particular note, the Bank introduced extensive and specific evidence showing that the Agency's officials in Georgia had discovered, but failed to disclose, an attempt by Mr. Rabhan to defraud the Agency and another lender in 1995. See Bank's Closing Summation in the first NAD hearing at CR 12937-12957. This evidence showed that in 1995 Mr. Rabhan submitted fraudulent equipment invoices to a lender and the Agency in hopes of securing financing through the B&I guaranteed loan program. Id.

In October 1995, Agency officials in Georgia investigated and discovered Mr. Rabhan's fraudulent activity and no loan was made nor any guarantee issued. Id. High-ranking Agency officials have testified to Congress concerning the Agency's missteps with respect to the Catfish loan and the Agency's obligation to disclose material negative information in the Agency's possession concerning a potential borrower to the lender before loan closing or issuance of a guarantee by the Agency. Id. Despite this obligation to disclose such 'red flag' information, the Agency withheld all information regarding its investigation of Mr. Rabhan from the Bank. Id. Moreover, the Agency did not report Mr. Rabhan to any law enforcement authority for further investigation or prosecution despite Departmental regulation 1700-2(7)(f)(2), which requires reporting of fraudulent or suspicious activity in Agency programs. Id.

Enterprise National Bank had no knowledge whatsoever of Mr. Rabhan's previous attempt to defraud when the Bank met with the very same Agency officials who had uncovered the 1995 fraud about guaranteeing a loan to Mr. Rabhan's Catfish business just three years later in 1998. Id. The Agency did not disclose Mr. Rabhan's prior attempt to commit loan fraud to the Bank. Id.

The B&I program regulations place the burden of determining whether a loan guarantee can or should be issued squarely on the Agency. See 7 C.F.R. §§ 4279.165, 4279.173. Because the Agency was in sole possession of the information regarding Mr. Rabhan's prior attempt to commit banking fraud, it alone had the responsibility for ensuring that the Bank knew this specific information, that the Bank did not close the loan, and that the Agency did not issue the guarantee. (CR 12937-12957). In the end, the Agency withheld the information, permitted the Bank to close the loan, issued the guarantee, and then proceeded to dishonor its guarantee when the potential fraud, of which it alone had knowledge, materialized. Id.

Had the Bank known of Mr. Rabhan's prior attempt to defraud, the Bank never would have closed the loan to Catfish. Id. It was the Agency's bad faith in withholding evidence of Mr. Rabhan's fraudulent activity that set the stage for the loan default and the Agency's loss. Id.

II.   **Throughout the NAD proceedings the Agency attempted to withhold evidence of a bribery, kickback, and loan manipulation scheme between Mr. Rabhan and Agency officials**

During the first NAD hearing, the Bank presented evidence of a bribery, kickback, and loan manipulation scheme involving Agency officials within the B&I loan program. (CR 12937-12957). This evidence showed that the scheme involved Mr. Rabhan and others acting at his direction. Id.

6

The Bank discovered the scheme only after counsel for Bank received a whistleblower call on March 8, 2004 from Howard Franklin, the former Georgia state office supervisor in charge of the B&I loan program in Georgia. Id. As Mr. Franklin explained, Agency officials in the national office were engaged in a scheme to manipulate the B&I loan program. Id. As part of this scheme, Agency officials were allegedly taking kickbacks from borrowers, including Mr. Rabhan, to push through questionable loans, and were actively engaged in covering up their activities and keeping this information from the lenders making loans under the program. Id. These national office officials instructed Georgia state office staff to withhold this information from the Bank. Id.

Even though Mr. Franklin had evidence directly related to the Catfish guarantee on appeal, and specifically to whether the Bank's actions were the cause of the losses alleged by the Agency, the Agency steadfastly refused to make Mr. Franklin available for questioning during the first hearing and uniformly withheld all documentary evidence described by Mr. Franklin as supporting his whistleblower allegations.

After denying the Bank's request for a subpoena to secure Mr. Franklin's testimony and documents under NAD regulations, the first NAD Hearing Officer issued a determination on October 12, 2004 finding for the Agency on the underlying claims. (Complaint ¶ 48, Answer ¶ 48; CR 1799-1822). The first NAD Hearing Officer's Determination notes that he refused to consider any evidence of the Agency's own negligence or wrongdoing. (CR 1817).

On November 12, 2004, the Bank requested a review by the NAD Director of the Hearing Officer's October 12, 2004 determination. (Complaint ¶ 50, Answer ¶ 50; CR 13262-13546). The Bank's request was based, in part, on the Agency's due process violations in

preventing Mr. Franklin from testifying, and unjustifiably withholding numerous relevant documents from production under the NAD regulations. (CR 13262-13546).

On February 7, 2005, the Deputy Director of the NAD issued a Director Review Determination finding that the Hearing Officer had improperly excluded evidence of Mr. Franklin's whistleblower allegations and had failed to comply with NAD regulations in allowing the Agency to withhold relevant documentary evidence from the Bank. (CR 13167-13176).

The Deputy Director remanded the appeal to a new Hearing Officer to consider the Bank's subpoena and document requests, to take action to eliminate the Agency's violations of the Bank's due process rights, and to re-open the hearing and issue a new appeal determination if deemed necessary by the Hearing Officer on remand. Id.

### III. The Agency continued to act in bad faith in the remand proceedings and went so far as to threaten an adverse witness and to attempt to influence the new Hearing Officer through a prohibited ex parte communication

On March 24, 2005, NAD Hearing Officer Charles R. Mills (assigned to conduct the remand proceedings) approved the issuance of a subpoena requiring whistleblower Howard Franklin's attendance at the remand hearings called for the purpose of taking Mr. Franklin's testimony and resolving certain of Mr. Mills' questions regarding the parties underlying factual contentions. (CR 14300-14303).

Prior to the remand hearings scheduled for May 4th and 5th, 2005, the Agency disclosed that while Mr. Franklin would be made available to testify with use of his documents, the Bank would not be permitted to review or copy the documents prior to Mr. Franklin's scheduled testimony. (Complaint ¶ 55, Answer ¶ 55).

Without waiving its objections to proceeding without access to the documentary evidence, the Bank took Mr. Franklin's testimony in the remand hearings and elicited specific testimony concerning the Catfish loan, Mr. Rabhan's prior dealings with the Agency, the bribery, kickback, and loan manipulation scheme at the Agency, and other relevant topics. (CR 22369-22815, consisting of the transcript of the May 4-5, 2005 remand hearing).

At the outset of his testimony, Mr. Franklin refused to take the oath explaining that the Agency had prevented him from preparing for his testimony by withholding access to his documents. Id. Mr. Franklin went on to state that he felt threatened by the Agency's representatives and Georgia state office staff, who, according to Mr. Franklin, had attempted to influence his subpoenaed testimony in the NAD hearing by calling his pension benefits into question should he testify. Id. At the conclusion of Mr. Franklin's testimony on May 4, 2005, the Agency agreed to produce a small portion of the documentation Mr. Franklin relied upon during his testimony. However, the Agency refused to release the balance of the information, claiming, among other things, that it was not relevant despite the fact that Mr. Franklin had referenced it during his testimony and repeatedly referred to his documents as containing the most complete answers to the questions put to him. Id.

On May 31, 2005, the Bank renewed its request to the NAD for a subpoena duces tecum requiring production of Mr. Franklin's documents by the Agency. (Complaint ¶ 58, Answer ¶ 58; CR 14169-14223).

The subpoena request also sought production of a complete and unredacted copy of the Report of Investigation compiled by the Agriculture Department's Office of Inspector General ("OIG"). (Complaint ¶ 59, Answer ¶ 59; CR 14169-14186). As the Agency openly

acknowledged during the remand hearings, the unredacted OIG report on the Catfish loan formed the basis for the Agency's October 20, 2003 adverse determination letter. (CR 13556). Although NAD regulations required its production in December 2003, the Agency had steadfastly refused to produce the report or the documentation supporting it for more than 18 months at that point. (CR 13557).

On June 9, 2005, the Hearing Officer issued a National Appeals Division subpoena to the Agency's national administrator requiring production, to both the NAD and to the Bank's counsel, of Mr. Franklin's whistleblower documents, the complete and unredacted OIG report of investigation on the Catfish loan, and other specific documents relevant to the proceedings. (Complaint ¶ 60, Answer ¶ 60; CR 14138-14139). The Hearing Officer was careful to counsel the Agency that any documents submitted to the NAD must also be provided to the Bank to avoid a prohibited ex parte communication under NAD regulations. (CR 13556).

Rather than complying with the subpoena and the Hearing Officer's instructions, the Agency knowingly made one production of documents to the Hearing Officer while producing a much smaller and significantly redacted set of documents to the Bank. (CR 13556). The Agency's production to the Bank did not comply with the terms of the subpoena and violated the Bank's due process rights by prohibiting access to documentary evidence that the Agency had used to support its case against the Bank. (CR 13557).

On July 15, 2005, Hearing Officer Mills issued a Notice to Agency to Show Cause Why Its Claim Or Interest In Subject Appeal Should Not Be Dismissed, Denied, Disregarded, or Otherwise Adversely Affected On Account Of Its Violation of Rules Prohibiting Ex Parte Communication (the "Notice"). (Complaint ¶ 63, Answer ¶ 63; CR 14068-14073). In the

Notice, Hearing Officer Mills found that Agency counsel Mark Stevens, acting as a representative and on behalf of the Agency:

(1) misled the NAD in describing the relevancy of Mr. Franklin's whistleblower documents;

(2) failed to comply with the NAD's June 9, 2005 subpoena duces tecum; and

(3) knowingly violated the prohibition in 7 C.F.R. § 11.7(b) against engaging in ex parte communication.[4] (CR 14068-14073).

Following submission of briefs by the Agency and the Bank in response to the NAD's Notice to the Agency to Show Cause, as well as written summations on all issues discussed during the remand proceedings, Hearing Officer Mills issued his Remand Determination on December 2, 2005. (Complaint ¶ 65, Answer ¶ 65; CR 14040-14050, 13946-14013, 13550-13569).

In the Remand Determination, the Hearing Officer found that the Agency violated the NAD regulations prohibiting ex parte communications concerning the merits of an appeal. The Hearing Officer noted:

> The communication consisted of an OIG Report of Investigation (ROI) that one of [the Agency's] representatives, an attorney with USDA Office of General Counsel, submitted to NAD, on [the Agency's] behalf on June 30, 2005. Although [the Agency] submitted the ROI to NAD, it refused to provide the same to [the Bank.] [The Agency] provided [the Bank] with a heavily redacted version of the ROI that, due to the redactions, differed from the ROI received by NAD. The ROI submitted to NAD was relevant to the merits of the appeal because [the Agency] relied upon it as a basis for its adverse decision. By sending this evidence to NAD and withholding it from [the Bank], [the Agency] made a prohibited ex parte communication. [The Agency] made the prohibited ex parte communication after it received repeated notice not to do so.

---

[4] 7 C.F.R. § 11.7(b) states: "No interested person shall make or knowingly cause to be made to any officer or employee of the [NAD] an *ex parte* communication relevant to the merits of the appeal."

11

(emphasis added). (CR 13556).

The Hearing Officer also noted that Agency counsel, in seeking to explain his conduct on behalf of the Agency, "misstate[d] facts" and made "unsupported claims." (CR 13557). As a result of the Agency's conduct, the Hearing Officer formally disregarded all evidence submitted by the Agency as part of its ex parte communication and segregated that evidence within the NAD case record. Id.

Lastly, in the operative and enforceable portion of the Remand Determination, the Hearing Officer found that the Bank had met its regulatory burden of proof by proving by a preponderance of the evidence that the Agency's decision to reduce, deny, and dishonor its B&I program loan guarantee was erroneous. (CR 13564). Following the Agency's failure to file a further administrative appeal, the Remand Determination became final and enforceable by this Court. (Complaint ¶ 70, Answer ¶ 70).

## IV. The Agency refuses to comply with the NAD's Remand Determination

After receiving the Hearing Officer's Remand Determination, undersigned counsel for the Bank contacted Agency counsel Mark Stevens on January 12, 2006 to discuss the Bank's renewed claim for payment under the guarantee. Mr. Stevens, speaking on behalf of the Agency, represented that both the state and national Agency offices were processing the Bank's loss claim for payment in full plus accrued interest. Undersigned counsel's letter to Mr. Stevens of January 12, 2006 memorialized the conversation. (A true and correct copy of the January 12, 2006 letter is attached to the Bank's Complaint as Exhibit A). Neither Mr. Stevens nor any other Agency official ever contradicted or responded to the letter. Furthermore, the Agency chose not to

pursue an appeal and, as a result, the Remand Determination became final. (Complaint ¶¶ 14-17, Answer ¶¶ 14-17).

As instructed by the Agency, the Bank submitted a revised request for payment under the B&I guarantee on February 3, 2006. (Complaint ¶ 21, Answer ¶ 21). The Bank revised its request because it had recently completed the sale of all remaining collateral. With the Hearing Officer's Remand Determination finding for the Bank, and with the sale of loan collateral completed, final and full payment on the guarantee was appropriate under the B&I program regulations. See 7 C.F.R. § 4287.158. Based upon the ruling announced in the Hearing Officer's Remand Determination, and the assurances of Agency counsel Mark Stevens that the Bank's loss claim would be processed for payment in full with accrued interest, the Bank expected the Agency to honor its guarantee in full.

On March 3, 2006, the Agency announced its decision to further dishonor its guarantee by refusing payment of the Bank's claim to $3,030,000 in guaranteed funds plus accrued interest while incorrectly relying upon the Hearing Officer's Remand Determination. (A true and correct copy of the Agency's March 3, 2006 letter is attached to the Bank's Complaint as Exhibit B). The $3,030,000 in guaranteed funds was specifically at issue in the NAD proceedings and Remand Determination and the Agency did not offer any additional explanation for its refusal to process the Bank's claim. Id.

Rather than fulfilling its statutory and regulatory mandate to comply with final decisions issued by the NAD, the Agency has improperly employed the Remand Determination to reject the Bank's claim for payment of more than $3 million under the guarantee. Id.

13

## ARGUMENT AND CITIATION OF AUTHORITY

I.   **The Agency's March 3, 2006 decision is contrary to the plain language of the Remand Determination and violates the Agency's own procedure for challenging NAD determinations**

Contrary to Agency counsel's January 12, 2006 statement that the Agency would process the Bank's loss claim for payment in full, the Agency, through its March 3, 2006 decision, has attempted to turn the Remand Determination on its head by ignoring its conclusion and asserting a right to further reduce the loan guarantee despite the fact that the Agency lost in the NAD proceedings and elected not to appeal. The Agency is attempting to improperly shield its action from review, is ignoring the operative portion of the Remand Determination itself, and is violating the requirements placed on the Agency to abide by its own regulations and the rulings of its National Appeals Division.

The Remand Determination's operative "Determination" section states:

Under 7 C.F.R. § 11.8(e), Appellant has the burden of proving the adverse decision is erroneous by a preponderance of the evidence. <u>Appellant has proven that RBS's decision is erroneous.</u>

(emphasis added). (CR 13564).

The NAD's Hearing Officer Manual makes clear that the "Determination" section of the Hearing Officer's ruling is the operative portion of the ruling to be acted upon by the Agency and the Courts. In distinguishing the "appeal determination" section from other sections appearing in Hearing Officer rulings, the NAD's manual states, "The appeal determination is limited to whether the agency erred or did not err in the adverse decision." See NAD Hearing Officer Manual, http://nad.usda.gov/nadguide.pdf at 48, March 26, 2007. The clear intent of the

14

Hearing Officer in his Remand Determination was to find for the Bank after reaching the conclusion that the Bank had met its burden of proof in the case. (CR 13564).

The Agency has an affirmative duty to abide by the determinations of the NAD issued pursuant to USDA regulations. Because the NAD statutes and regulations define a procedure for the Agency to follow if it is dissatisfied with an NAD ruling, the Agency cannot ignore those procedures by simply refusing to abide by a determination against it. See 7 U.S.C. § 6991 et seq.; 7 C.F.R. § 11.1 et seq.; International Fabricare Institute v. U.S. E.P.A., 972 F.2d 384, 396 (D.C. Cir. 1992) ("If agency action is based upon defined procedure . . . that procedure must be scrupulously observed."); Sierra Club v. Martin, 168 F.3d 1, 4 (11th Cir. 1999) ("[C]ourts must overturn agency actions which do not scrupulously follow the regulations and procedures promulgated by the agency itself."). If, as here, the Agency chooses not to abide by its own procedures and regulations, the Court can and should enter declaratory and affirmative relief to resolve the dispute.

## **CONCLUSION**

The Agency has unlawfully refused to comply with the final determination of the NAD in this matter. As a result of the Agency's conduct, the Bank seeks an order declaring that the Agency's March 3, 2006 decision is without justification and compelling the Agency to comply with the NAD Remand Determination by processing the remainder of the Bank's loss claim for payment in full plus accrued interest without delay.

[SIGNATURE OF COUNSEL APPEARS ON THE FOLLOWING PAGE.]


Respectfully submitted, this 29th day of March, 2007.

_____
JOHN J. RICHARD
D.C. Bar No. 480212
JOHN M. GROSS
Georgia Bar No. 313520 (admitted *pro hac vice*)

TAYLOR, BUSCH, SLIPAKOFF & DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
(770) 434-6868 – Telephone
(770) 434-7376 – Facsimile

                                      Attorneys for Plaintiff
                                      Enterprise National Bank

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ENTERPRISE NATIONAL BANK, | ) | |
| | ) | |
|     3980 RCA Blvd., Suite 8012 | ) | |
|     Palm Beach Gardens, FL 33410 | ) | |
| | ) | |
|     Plaintiff, | ) | CIVIL ACTION NO. 1:06-cv-01344-RCL |
| | ) | |
| v. | ) | |
| | ) | |
| MIKE JOHANNS, SECRETARY, | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| AGRICULTURE, | ) | |
| | ) | |
|     1400 Independence Ave., S.W. | ) | |
|     Washington, DC 20250 | ) | |
| | ) | |
|     Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Heather D. Graham-Oliver, Esq.
    Assistant United States Attorney
    U.S. Department of Justice
    555 4th St., N.W.
    Washington, D.C. 20530

This 29th day of March, 2007.

                                        John J. Richard
                                        D.C. Bar No. 480212