IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ENTERPRISE NATIONAL BANK, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL ACTION NO. 06-1344 (RCL) |
| | * | |
| MIKE JOHANNS, SECRETARY, | * | |
| UNITED STATES DEPARTMENT | * | |
| OF AGRICULTURE, | * | |
| | * | |
| Defendant. | * | |

**MOTION FOR DECLARATORY JUDGMENT WITH MEMORANDUM OF LAW**

NOW COMES THE DEFENDANT, THE UNITED STATES OF AMERICA, acting on behalf of the United States Department of Agriculture (USDA), Rural Development (RD), Rural Business - Cooperative Service (RBS) (collectively known as the Agency), through the United States Attorney for the District of Columbia, and hereby files this Motion for Declaratory Judgment with Memorandum of Law, in support of its position that this Defendant must prevail on all counts involving all of the issues in this action.

This action is brought under Chapter 7 of Title 5, which is commonly referred to as the Administrative Procedure Act (APA). The relevant provisions are set forth at 5 U.S.C. §§ 701-706. Section 706 of Title 5 of the APA defines the scope of review to be undertaken by a court reviewing a federal agency action. As such, this action is NOT a de novo proceeding but rather is to be conducted as a record review of the USDA's National Appeals Division (NAD) decision, case record and attendant documents. Statutory authority for this judicial procedure is cited in 7 U.S.C. Section 6999, Judicial Review:

"A final determination of the Division shall be reviewable and enforceable

>by any United States district court of competent jurisdiction in accordance with chapter 7 of Title 5."

## *FACTS AND PROCEDURAL PROCESS*

This case arises out of the Business and Industry (B&I) Guaranteed Loan Program administered by the Agency. This program guarantees business loans made by private lenders in rural areas. In this instance, a $5,000,000 B&I loan was made by Enterprise National Bank to Catfish INT, a company created by Mr. Erwin David Rabhan. (AR 13552, Remand Decision, Exhibit 1, p. 3). The purpose of the loan was to build a catfish processing plant and attendant facilities. (AR 13553, Remand Decision, p. 4). The Enterprise National Bank requested the Agency to guarantee the loan to Mr. Rabhan's company.

The guarantee is backed by the full faith and credit of the United States with limited exceptions. One of those exceptions is for negligent servicing of the loan. On June 24, 1998, the Agency issued a Conditional Commitment for Guarantee, Form RD 4279-3 with Exhibit A (AR 245-256), to Enterprise National Bank (the Lender), based on the approved loan guarantee request from the Lender for the Borrower, Catfish INT, and personal guarantor, Erwin David Rabhan. This Conditional Commitment required the Lender to certify that specific conditions were met in order for the Agency to issue a Loan Note Guarantee for 70% of the $5 million loan principal (AR 245, 251) - the percent of guarantee was later increased to 75% based on the Lender's representations (Modification No. 1 to the Conditional Commitment AR 242).

On July 19, 1999, the loan closed and the Lender provided certification that all of the terms of the Conditional Commitment had been met (AR 184-187). The Loan Note Guarantee was issued on October 1, 1999 (AR 181-183). The Agency's relationship is exclusively with the Lender based on the guarantee being issued by the Agency to the Lender. The regulations

specifically address the lender's duties and responsibilities (see in particular 7 C.F.R. Sections 4279.1(b) and 4279.30) and the Agency's reliance upon the lender for the proper processing and servicing of the loan.  The regulations require the Agency to depend upon the lender to underwrite and to service the loan.  7 C.F.R. 4279.30(b).

After a prolonged construction period, the Lender finally recognized the business as a failure and requested that an Estimated Loss Claim (AR 5760), dated November 20, 2002, be paid to it.  Prior to any payment to the Lender, the Agency became aware of several factors that identified the Lender's negligence in processing and servicing the loan which were thought to be attributable to losses amounting to at least the total amount of the loss claim and which would have resulted in the loss claim being reduced to zero.  Therefore, on May 22, 2003, the Agency reduced the loss claim to $0 and gave the Lender the required appeal rights (AR 1732-1739).

The Lender requested reconsideration, which ultimately resulted in the Agency, on October 20, 2003, issuing its second-and-final adverse decision letter (see AR 1740-1757) thereby citing the following five bases of negligent servicing:

1. *Lender was negligent in ensuring that loan proceeds were used only for authorized purposes.*

2. *Lender did not ensure that the proposed construction was completed pursuant to the quality and quantity valuation criteria as documented in the loan processing application and appraisal as required by 7 C.F.R. 4279, Subparts A and B, and 7 C.F.R. 4287, Subpart B.*

3. *Lender did not ensure that collateral was obtained as required under the Conditional Commitment and Loan Agreement.*

4. *Lender did not ensure that borrower injected enough equity into the project for it to succeed.*

5. *Lender withheld from RD the following - (a) Significant concerns over completing the project; (b) Evidence that the personal judgment was not settled prior to closing AND that Lender paid same from loan*

*proceeds; and, (c) Misrepresented the draw requests.*

Lender filed an appeal with the National Appeals Division (NAD), which was heard on June 9 and 10 and August 9 through 12, 2004. On October 12, 2004, the Hearing Officer issued his decision, which upheld the Agency on all five bases and affirmed the Agency's total reduction of the Loan Note Guarantee to $0. (AR 1798-1822).

On November 16, 2004, Lender filed a Request For Director Review. (AR 13200-13203). On or about February 7, 2005, the NAD Deputy Director issued his decision, remanding the case to a new Hearing Officer to consider allowing the Lender to request subpoenas for certain witnesses and documentation and to submit exhibits which were denied in the first hearing. (AR 13167-13176).

On May 4 and 5, 2005, the Remand Hearing, the subject of this appeal, was conducted. On December 2, 2005, the Hearing Officer issued his <u>Remand Appeal Determination.</u> (AR13550-13569, see Exhibit 1 ). The Hearing Officer decided the following issues:

1. Did the Agency make an <u>ex</u> <u>parte</u> communication relevant to the merits of the appeal to a NAD official, and if so, is that cause for Agency's interest in the appeal to be denied, disregarded, or otherwise adversely affected?

2. Did the use of loan funds for unauthorized purposes occasion a loss of $2,134,708?

3. Did construction deficiencies and negligence in construction oversight occasion a loss of $1,062,053?

4. Did the Lender fail to ensure that its borrower contributed $2,950,000 to the project to purchase equipment, and if so, did this occasion a loss of $2,950,000?

5. As Agency did not associate a specific, unduplicated loss to its allegation that Appellant withheld information and misrepresented draw requests, is the allegation grounds to

reduce appellant's loss claim?

6. Did the Agency cause the losses on subject loan by withholding adverse information from appellant about the borrower who received the loan in question?

With respect to issue #3, the Hearing Officer determined that while construction deficiencies and negligence in construction oversight did not occasion an overall loss of $1,062,053, it did occasion a loss of $80,000. He found that plans for the project included a maintenance shed and guardhouse valued at $80,000. The maintenance shed and guardhouse were never built, although the Lender was responsible for ensuring that the borrower constructed same. This occasioned a loss of $80,000 collateral on the loan.

Moreover, the Hearing Officer found on behalf of the Agency with respect to issue #4 and determined that the Lender failed to ensure that the borrower contributed the required $2,950,000 into the project to purchase equipment. The Hearing Officer found that Lender's negligence in verifying the existence of this equipment and in allowing the loan to proceed without this needed equity injection occasioned a loss of $2,950,000. The Hearing Officer held for the Agency on these two important items but also ruled that Agency did not produce sufficient evidence to prevail on its other reasons for reducing the Loan Note Guarantee to zero. In his conclusion, the Hearing Officer did not restate his findings on the guardhouse and equity injection (equipment), but merely stated he could not support the Agency's determination to *fully* reduce the loan. Neither side appealed the Hearing Officer's decision to the National Appeals Division Director; thus, the <u>Remand Appeal Determination</u> remains intact as the ultimate administrative decision regarding this case.

Thereafter, the Lender submitted an updated final loss claim; the Agency calculated the loss due to the Lender (in accordance with its contractual obligations and the reading of the

5

Hearing Officer's opinion); and, the Agency sent the Lender a check for the appropriate amount of $956,252.19.

On July 21, 2006, the Lender filed this lawsuit, arguing that the Hearing Officer's opinion required its loss claim to be paid in full, without any deductions. The Agency disagrees with the Plaintiff's errant and misguided interpretation of the Hearing Officer's opinion, as issued in his Remand Appeal Determination. (AR 13550-13569) Accordingly, the Agency is requesting that the Hearing Officer's Opinion, finding on behalf of the Agency on the aforementioned two issues be upheld.

## *SOLE ISSUE*

The issue presented in this civil action is whether the Agency's decision to reduce the Loan Note Guarantee for the Lender's final loss claim was erroneous. The NAD Remand Hearing Officer upheld two issues identified in the Agency adverse decision, which were (1) the Lender was negligent in ensuring that collateral was obtained - guardhouse and maintenance building ($80,000) and (2) the Lender was negligent in ensuring that the required equity injection of $2.95 million in machinery and equipment was acquired. Based upon that determination, the Agency reduced the Lender's final loss claim accordingly and paid $956,252.19. This defendant will show that the evidence well supports the Agency's administrative decision.

## *ARGUMENT AND CITATIONS TO THE ADMINISTRATIVE RECORD*

1. Standard of Review

The Administrative Procedure Act provides in 5 U.S.C. Section 706, Scope of Review, as follows:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action the reviewing court shall -
>
>> (1)  compel agency action unlawfully withheld or unreasonably delayed; and,
>>
>> (2)  hold unlawful and set aside agency action, findings, and conclusions found to be -
>>
>>> **(A)  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;**
>>>
>>> (B)  contrary to constitutional right, power, privilege, or immunity;
>>>
>>> (C)  in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>>>
>>> (D)  without observance of procedure required by law;
>>>
>>> **(E)  unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute;** or
>>>
>>> (F)  unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

The APA, 5 U.S.C. § 706(2)(Emphasis added).

Determinations by the USDA NAD are reviewed pursuant to the APA under either the "arbitrary and capricious" standard or the "substantial evidence" standard.  See Beard v. Glickman, 189 F.Supp. 2d 994 (C.D. Ca. 2001); 5 U.S.C. § 706(2)(A) & (E).

When reviewing an agency action to determine if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," the court must afford deference to the

agency decision and may not substitute its judgment for that of the agency. See Ethyl Corp. v. EPA, 541 F.2d 1, 34 (D.C. Cir. 1976); see also Wright v. United States, 164 F.3d 267, 268-69 (5th Cir. 1999) (affirming an agency rights determination); Arizona Public Service Co. v. United States, 742 F.2d 644, 649 (D.C. Cir. 1984). The scope of the court's deferential review under the "arbitrary and capricious" standard is "'searching and careful,' but 'the ultimate standard of review is a narrow one.'" Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 378 (1989) (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)). Moreover, the court affords its "greatest deference" to the agency when the agency exercises "special competence" in the subject matter delegated to its regulation. Am. Ship Bldg. Co. v. NLRB, 380 U.S. 300, 316 (1965). Because the ultimate standard of review is highly deferential, to uphold an agency action the court need not find that the agency's decision is "the only reasonable one, or even that it is the result [the court] would have reached ... ." Am. Paper Inst., Inc. v. Am. Elec. Power Serv. Corp., 461 U.S. 402, 422 (1983). Indeed, the arbitrary and capricious standard presumes the agency action to be valid and the burden is on the plaintiff to overcome that presumption. Maryland Nat. Capital Park & Planning Comm'n v. Lynn, 514 F.2d 829, 834 (D.C. Cir. 1975).

   Agency action enjoys a "presumption of regularity," and a plaintiff faces a heavy burden in establishing that an agency's conduct violates this standard. Overton Park, 401 U.S. at 415; American Fed. of Govt. Employees v. Reagan, 870 F.2d 723, 727 & n. 33 (D.C. Cir. 1989) (reviewing cases). It is a basic tenet of administrative law that judicial review of informal agency adjudication is "narrow" and the Court is not entitled to substitute its judgment for that of the agency. Overton Park, 401 U.S. at 416; Vermont Yankee Nuclear Power Corp. v. NRDC, 435 U.S. 519, 558 (1978); Doraiswamy v. Secretary of Labor, 555 F.2d 832 (D.C. Cir. 1976).

The Court's role is not to ensure that the Agency's application of its regulations to the facts is the most natural or logical, the only possible interpretation, or the one that the Court would have adopted in the first instance, but only that it is reasonable and consistent with the regulations. National Trust for Historic Preservation v. Dole, 828 F.2d 776, 782 (D.C. Cir. 1987); Belco Petroleum Corp. V. FERC, 589 F.2d 680, 685 (D.C. Cir. 1978). And, the agency is entitled to even more deference in interpreting its regulations than in reading its statutory mandate. Puerto Rico Elec. Auth. V. FERC, 848 F.2d 243, 249 (D.C. Cir. 1988); see also Lyng v. Payne, 476 U.S. 926, 939 (1986).

In applying the arbitrary and capricious standard, judicial review is "confined to the full administrative record before the agency at the time the decision was made." Envtl. Def. Fund, Inc. v. Costle, 657 F.2d 275, 284 (D.C. Cir. 1981); see also 5 U.S.C. § 706 ("[T]he court shall review the whole record ... ."). Evidence outside the record should not be considered. See Camp v. Pitts, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").

The court must review the record to determine "whether the agency has considered the relevant factors and articulated a rational connection between the facts found and the choice made." Jifry v. FAA, 370 F.3d 1174, 1180 (D.C. Cir. 2004). Courts have considered several factors relevant in making this determination. For example, an agency action is arbitrary and capricious if the agency: relied on factors not intended to be considered, failed to consider an important aspect of the problem, explained its decision in a manner that contradicts the evidence, or reached a conclusion so implausible that it cannot be explained by a difference in view or the product of agency expertise. See Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State

Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983); Beard v. Glickman, 189 F.Supp. 2d at 998.

"Substantial evidence" in the APA means more than a mere scintilla but less than the weight of the evidence and refers to relevant evidence which reasonably supports a conclusion. If the evidence can reasonably support either affirming or reversing the Agency's decision here, a court may not substitute its judgment for that of the agency. Beard, 189 F.Supp. 2d at 998. Thus, USDA's interpretation and application of its regulations to the facts must be accepted "unless it is manifestly unreasonable." Liberty Maritime Corp. v. U.S., 928 F.2d 413, 419 (D.C.Cir. 1991), quoting National Wildlife Federation v. Gorsuch, 693 F.2d 156, 174 (D.C.Cir. 1982).

Furthermore, judicial review of an agency decision such as the one challenged here does not involve a de novo trial of the facts based on a record developed initially in the reviewing court. See Camp v. Pitts, 411 U.S. 138, 142 (1973); Overton Park, 401 U.S. at 416 (1971). Rather, review is based on the complete administrative record that was before the decision maker at the time the challenged decision was made. Id.

Under the APA, 5 U.S.C. Section 706, the NAD Director's determination is supported by substantial evidence in the administrative case record and is not arbitrary or capricious.

2. The NAD Hearing Officer's Determination That Plaintiff Was Negligent In the Servicing of The Loan In Two Instances Is Supported By The Record And Is Neither Arbitrary Nor Capricious.

7 C.F.R. Section 4279.1(b) states: It is the responsibility of the lender to ascertain that all requirements for making, securing, servicing, and collecting the loan are complied with (AR 137). All regulatory requirements as known to the Lender based upon execution of the Lender's Agreement (AR 174-178), such as, 7 C.F.R. Section 4279.30 (AR 140), 7 C.F.R. 4279.72 (AR 144), 7 C.F.R. 4279.131(b) (AR 153), 7 C.F.R. Section 4279.144 (AR 155), 7 C.F.R. Section

10

4279.156 (AR 156-157), 7 C.F.R. Section 4279.181 (AR 159-160), and 7 C.F.R. Section 4287.107 (AR 163-164), required the Lender to ensure that the loan was monitored and serviced with due diligence, to ensure the project was completed as projected in the approved loan application package.

The B & I Guaranteed Loan program guarantees business loans made by eligible lenders for projects located in rural areas. The guarantee is backed by the full faith and credit of the United States with limited exceptions. One of those exceptions is for negligent servicing of the loan. 7 C.F.R. 4279.72(a) provides in relevant part as follows:

> In addition, the guarantee will be unenforceable by the lender to the extent any loss is occasioned by. . . negligent servicing. . . .

The standard used to establish negligent servicing is the prudent lender standard which is applicable to the Guaranteed Loan Program, pursuant to 7 C.F.R. § 4279.2(a). The definition of negligent servicing reads as follows:

> Negligent servicing. The failure to perform those services which a reasonably prudent lender would perform in servicing (including liquidation of) its own portfolio of loans that are not guaranteed. The term includes not only the concept of a failure to act, but also not acting in a timely manner, or acting in a manner contrary to the manner in which a reasonably prudent lender would act.

Id. In this case the NAD Hearing Officer found that two of the several reductions made by the Agency to the Loan Note Guarantee could be upheld. These were as follows:

    (A)    <u>Construction Deficiencies and Negligence In the Construction Oversight</u>.

The plans for the project submitted by the Plaintiff to the Agency included a maintenance

11

shed and guardhouse valued at $80,000.00. (AR 1216) These structures were never built and the Lender failed to ensure that its borrower built them. The Lender was required to ensure the proposed construction was completed pursuant to the quality and quantity valuation criteria documented in the loan processing application and appraisal as required by 7 C.F.R. 4279, subpart A, paragraph 4279.30(a)(1)(v) (AR 140); 7 CFR 4279, Subpart A, paragraph 4279.72(a) (AR 144); 7 CFR 4279, Subpart B, paragraphs 4279.156(a) and (b) (AR 156-157); 7 CFR 4279, Subpart B, paragraphs 4279.181 (b) and (j) (AR 159-160); Subpart B, paragraph 4287.107 (AR 163).

7 CFR 4279, Subpart B, paragraph 4279.156 (AR 156), Planning and performing development, specifically states: (a) Design policy. The lender must ensure that all project facilities must be designed utilizing accepted architectural and engineering practices and must conform to the applicable Federal, state, and local codes and requirements. The lender will also ensure that the project will be completed with available funds and, once completed, will be used for its intended purpose and produce products in the quality and quantity proposed in the completed application approved by the Agency.

7 CFR 4279, Subpart B, paragraph 4279.156(b) (AR 156) states: Project control. The lender will monitor the progress of construction and undertake the reviews and inspections necessary to ensure that construction conforms with applicable Federal, state, and local code requirements; proceeds are used in accordance with the approved plans, specification, and contract documents; and that funds are used for eligible project costs.

The Lender's Agreement details the responsibilities of the Lender according to the servicing of a guaranteed loan, Section IV (B) and (C) (AR 175 - 176).

The Loan Agreement stated that the Borrower was to obtain the Lender's approval prior

to any changes to the construction as planned.  The Lender apparently did not enforce the following protective provisions with the Borrower.

Section 3.3, Construction Covenants...

(b) Borrower shall not execute any contract or become party to any arrangement for the performance or rendering of labor, services or work, or the supplying or furnishing of materials in the construction of the improvements, except with persons or entities approved by Lender.

( c ) Borrower shall deliver to Lender an original counterpart of all change orders to or affecting the Construction Contract, the Plans and Specifications or the construction of the Improvements, prior to the execution or approval of any such change order by Borrower.  No such change order shall become effective until it has been approved by Lender.

(h) Borrower shall not modify, change, supplement, alter or amend the Plans and Specifications or the Construction Contract without the prior written consent of Lender... (AR 206)

The maintenance building and guard house were not constructed.  The Agency determined the loss of value for these two items at $80,000 (AR 1216, 1352, Exhibit D - 12921-12922, 304, 376, 381).  There was no evidence of any other determination of value.  Accordingly, the Hearing Officer properly found on behalf of the Agency on this item, resulting in a reduction of the loss claim by $80,000.

    (B)    <u>The Bank Failed To Ensure The Purchase of Equipment, Which Occasioned a Loss of $2,950,000.00.</u>

The Lender did not obtain the collateral as required by the Conditional Commitment and Loan Agreement as required by 7 CFR 4279, Subpart A, paragraph 4279.30(a)(1)(iv) (AR 140); 7 CFR 4279, Subpart A, paragraph 4279.72 (AR 144); 7 CFR 4279, Subpart B, paragraph 4279.131(b) (AR 153); 7 CFR 4279, Subpart B, paragraph 4279.181(f), 4279.181(g), and

13

4279.181(j) (AR 160); and 7 CFR 4287, paragraph 4287.107 (AR 163-164).

Moreover, 7 CFR 4279, Subpart B, paragraph 4279.131(b) (AR 153) Collateral, states: Collateral must have documented value sufficient to protect the interest of the lender and the Agency.... Conditional Commitment, Exhibit A, Section 5, Security, requires that the lender must assure that the owner has good and marketable title to all of the above-required security in connection with this loan... The Lender's Agreement details the responsibilities of the Lender according to the servicing of a guaranteed loan, Section IV (B) and ( C ), in reference to collateral.

An integral part of this loan was the machinery and equipment, valued at $2.950 million which was required by the Conditional Commitment (AR 249). The machinery and equipment was to be the Borrower's equity injection into the project; however, the machinery and equipment were never purchased by the Borrower. As a result, the processing facility was never operational. The Lender certified that the terms and conditions of the Conditional Commitment were met. Insuring that the equity, as projected, is available to be used for the purposes stated in the Conditional Commitment and the Loan Agreement is the Lender's responsibility as provided in 7 CFR 4279, Subpart B, paragraph 4279.131(d) (AR 154).

The processing plant could not operate without the required machinery and equipment. The absence of the required machinery and equipment contributed to failure of the entire project. In addition to the absence of the machinery and equipment, the Lender did not ensure, as stated previously, that the facilities were built to the proposed valuation of $7.1 million (AR 1446).

The Lender had two letters acknowledging purchase orders of equipment as of May 1999. One acknowledgment is on a letterhead from HDAC Machining and Fabrication dated 5/20/99 for an amount of $676,000. (AR 349) The second acknowledgment is on a letterhead

from Design Alternatives, signed by Charles A. Creswell, for $1,822,600. (AR 348) The $676,000 equipment purchase letter also stated we will send a confirmed shipping date within 10 (ten) days... The Lender's Attorney eventually checked with this supplier in November 2001 about the equipment purchase; however, this due diligence should have been completed prior to loan closing instead of after the loan was in default. (AR 714 ) Also, it should be noted that the Lender paid Charlie Creswell on 3/9/01 for equipment totaling $20,000, which does not appear to be documented within the estimated loss claim. (AR 979-980) At that time, the Lender should have consulted with Mr. Creswell as to the rest of the equipment that was to be delivered. (AR 348, 714, 979 - 980)

There was no due diligence performed by the Lender to validate even the existence of the equipment collateral. The Lender sent the equipment list to two companies, Sylvester's and Engineered Refrigeration Systems, Inc., that the Borrower suggested were suppliers of catfish processing machinery (AR 282). The Lender received a handwritten note on the fax cover from Sylvester's stating "We verify the following prices to be correct" (AR 290) and, apparently, there is no response from the other supplier. However, when trying to confirm some details as to the equipment purchases, the Lender accepted two letters from different suppliers without any equipment itemization. The Lender's acceptance of the two letters did not confirm what was received as collateral. Furthermore, the information contained in the two letters does not equal the required $2,950,000 equipment collateral required as the Borrower's equity injection. (AR 224-233, 348-349, 739, 12921-12922)

The required $2.95 million in equity injection did not occur due to the Lender's negligence. Accordingly, the Hearing Officer properly found on behalf of the Agency on this item resulting in a reduction of the loss claim by $2,950,000.

## *SUMMATION*

As has been shown, the Lender failed in several respects to fulfill its obligations in regard to the servicing of this guaranteed loan.  It failed to monitor construction to verify that the buildings were built and the equipment and machinery to be purchased and to be installed in fact matched the proposed collateral which was relied upon to secure the loan.

For reasons unknown, the Plaintiff failed to act in accordance with executed contractual documents and applicable regulations governing the Business and Industry Guaranteed Loan Program.  Thus, this Defendant reduced the loss claim.   Agency regulations make the Lender liable for all loan servicing actions. Plaintiff's negligent actions and omissions in processing, monitoring, and servicing the guaranteed loan at issue resulted in this Defendant issuing a guarantee for a loan which it would have never issued otherwise.  Under the regulations and the documents as executed by the parties, the subject Loan Note Guarantee is unenforceable to the extent that any loss is occasioned by negligent servicing.

***Lender responsibility*** lies at the heart and the soul of this case, and it is the basis for the Agency's determination for its reduction to the lender's submitted loss claim.  Plaintiff can neither rebut nor counter any of the presented evidence or arguments by this Defendant, as the case record and documentation in existence support and justify the Agency's and NAD's adverse determination against the Plaintiff Lender.  Thus, this Defendant asserts that it must prevail on all of the issues.

WHEREFORE, this Defendant, the UNITED STATES OF AMERICA, prays:

1.     That the Court review all evidence presented as a "record review", without a trial de novo because this is a federal court review of a NAD proceeding;

2.     That the Court enter a decree declaring this Defendant's actions to have been

reasonable, proper, and in accordance with applicable laws and regulations;

    3.    That the Court rule in favor of this Defendant upon all issues presented in this case; and,

    4.    That the Court grant this Defendant such other and further relief as seems just and proper.

Respectfully submitted, this 5th day of April, 2007.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/
HEATHER GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th Street, NW - Civil Division
Rm. 4-4808
Washington, D.C. 20530
(202) 305-1334

Attorneys for Defendant