UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ENTERPRISE NATIONAL BANK** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 06-1344 (RCL) |
| ) | |
| **MIKE JOHANNS, SECRETARY,** ) | |
| **UNITED STATES DEPARTMENT OF** ) | |
| **AGRICULTURE** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OPINION**

**INTRODUCTION**

      Before the court are cross-motions [18 and 22] for declaratory judgment by plaintiff Enterprise National Bank ("the Bank") and defendant United States Department of Agriculture. Upon full consideration of the motions, opposition and reply briefs, the entire record herein, and applicable law, the court finds that the Bank's motion for declaratory judgment will be DENIED and that the USDA's motion for declaratory judgment will be GRANTED.

**Background**

      Plaintiff Enterprise National Bank ("the Bank) is a national banking association chartered under the laws of the United States which, among other things, makes commercial and other types of loans. The U.S. Department of Agriculture ("the Agency") operates the Business and Industry ("B&I") guaranteed loan program, through which it offers guarantees of business loans made by qualified private lenders in rural areas. In this instance, a $5,000,000 loan was made by

the Bank to Catfish INT, a company created by Mr. Erwin David Rabhan, for the purpose of building a catfish processing plant and attendant facilities. As envisioned, the facility would process live catfish into frozen and packaged fish filets for distribution.

The Agency's Georgia state office issued a B&I program guarantee for 75% of the loan on October 1, 1999. These loan guarantees are backed by the full faith and credit of the U.S. government with limited exceptions. One such exception is for negligent servicing of the loan. Catfish subsequently defaulted, and the Bank requested that an Estimated Loss Claim, dated November 20, 2002, be paid to it. On October 20, 2003, the Agency's Georgia state office issued an adverse Agency determination letter alleging, among other things, that the Bank was deficient in the processing and prudent monitoring of the loan; did not comply with several covenants of the Lender's Agreement, Loan Agreement, and Conditional Commitment for Guaranty; and was negligent in its performance of its obligations.

Decisions by the Agency to reduce, deny, or dishonor B&I program guarantees are appealable to the National Appeals Division (NAD) pursuant to 7 U.S.C. § 6996 and 7 C.F.R. § 11.3. The Bank filed an appeal with the NAD, whose Hearing Officer upheld the Agency's determinations in its adverse letter and affirmed the Agency's reduction of the Loan Note Guarantee to $0. On November 16, 2004, the Bank filed a Request for Director Review. The NAD Deputy Director then remanded the case to a new Hearing Officer to consider allowing the Lender to request subpoenas for certain witnesses and documentation and to submit exhibits that were denied in the first hearing.

On December 2, 2005, the new NAD Hearing Officer issued his Remand Appeal Determination, finding two losses—an equity injection of $2,950,000 that should have occurred and a maintenance shed and guardhouse valued at $80,000 that were never built—were due to

negligence on the part of the Bank but also indicating that he could not support the Agency's determination to fully reduce the Loan Note Guarantee. Neither the Bank nor the Agency appealed this Hearing Officer's determination; thus, the Remand Appeal Determination remains intact as the ultimate administrative decision regarding this case.[1] Final determinations by the NAD are enforceable by the U.S. District Courts pursuant to 7 U.S.C. § 6999.

The Agency interpreted this determination by deducting the two losses found by the NAD Hearing Officer from the loss claim submitted by the Bank, and sending the bank a check for the difference of $956,252.19. The Bank, however, claims in this lawsuit that the final determination requires that its loss claim be paid in full, without any deductions. The question presented here, then, is one of interpretation of the NAD's final determination.

**Standard of Review**

Under the Administrative Procedure Act, the court is to set aside an agency action that is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). The standard of review is highly deferential to the agency, so that a court need not find that the agency's decision is "the only reasonable one, or even that it is the result [the court] would have reached had the question arisen in the first instance in judicial proceedings." *Am. Paper Inst., Inc. v. Am. Elec. Paper Serv. Corp.*, 461 U.S. 402, 422 (1983). The court is not entitled to substitute its judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Moreover, judicial review is confined to the full administrative record before the agency at the time the decision was made. *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981). When reviewing that record, the court

---

[1] The Bank's many arguments regarding the Agency's bad faith in its participation in the NAD review cannot be considered here, as this court looks only to the final NAD determination.

considers "whether the agency has considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Jifry v. FAA*, 370 F.3d 1174, 1180 (D.C. Cir. 2004).

**ANALYSIS**

The Bank and the Agency have interpreted the NAD Hearing Officer's Remand Appeal Determination in different and irreconcilable ways—the Agency deducted the two losses found by the NAD Hearing Officer to be caused by the Bank from the loss claim submitted by the Bank, while the Bank has interpreted the final determination as requiring that its loss claim be paid in full, without any deductions. Unfortunately, the Remand Appeal Determination itself is unclear as to which determination is proper. The Hearing Officer simply found that the Agency's decision to award the bank $0 was erroneous, without providing a figure or method by which to calculate what the Bank is actually owed.

The Bank argues that the NAD Hearing Officer's Remand Determination is clear that the Bank had met its burden of proof in showing that the Agency's action in dishonoring the guarantee was erroneous so that no further reduction or refusal to honor the guarantee was warranted or permitted. The Bank notes that the NAD manual distinguishes the "appeal determination" section from other sections stating, "[t]he appeal determination is limited to whether the agency erred or did not err in the adverse decision." The Bank interprets this statement to mean that the only actionable conclusion contained in the entire Remand Appeal Determination is the sentence in this section marked "appeal determination," where the Hearing Officer found that the Bank had met its burden of proof and shown that the Agency's determination was erroneous. The Bank then argues that the Agency ignored this determination

4

in not awarding the full loss claim to the Bank, noting that "courts must overturn agency actions which do not scrupulously follow the regulations and procedures promulgated by the agency itself." *Sierra Club v. Martin*, 168 F.3d 1, 5 (11th Cir. 1999); *see also Florida Power & Light Co.*, 470 U.S. 729, 744 (1985) (noting that a reviewing court may remand a case to the agency if the record before the agency does not support the agency action or if the agency has not considered all relevant factors).

The Agency interprets this sentence in the "appeal determination" section to mean simply that the Hearing Officer could not support the Agency's determination to *fully* reduce the loan, so that other conclusions made throughout the text of the Remand Appeal Determination, such as the losses for which the Bank was found to be negligent, cannot be ignored.  The NAD Manual provides that "[f]indings of fact and conclusions constitute the essentials of the appeal determination and that there should be findings, analysis, and conclusions for each issue."  The Agency notes the Hearing Officer made an independent finding for each issue in the present case in the text, outside of the appeal determination section, and that two such findings were losses of 42,950,000 and $80,000 due to negligence on the part of the Bank.  The Agency argues that the deduction of the two losses was neither arbitrary nor capricious, and as such that the final amount paid by the Agency to the Bank is protected by the highly deferential standard of review.

NAD Hearing Officers do not enjoy equitable authority and therefore do not have the authority to carve out certain portions of an Agency's determination as correct and reapportion the damages sought or the extent of negligence purportedly proven.  7 C.F.R. § 11.9(e); *Beard v. Glickman*, 189 F. Supp. 2d 994, 1003 (C.D. Ca. 2001).  NAD Hearing Officers are able to recommend an equitable apportionment to the NAD Director, however, who does enjoy such authority.  *Id.*  Unfortunately, the NAD Hearing Officer made no such recommendation in this

5

case. Rather, the NAD Hearing Officer simply found that the Bank was not negligent with respect to $3,878,761 of the loss but was negligent with respect to $3,030,000, without suggesting a method by which to calculate what the Bank is owed. When the Hearing Officer determinations in favor of the Bank are added, the Bank is owed $2,909,070.75 plus interest. When the Hearing Officer determinations in favor of the Agency are subtracted from the Bank's claim, the Bank is owed $877,500 plus interest, a number quite close to the amount of the check finally sent by the Agency to the Bank.

Neither result is unreasonable; the difference in amounts is due solely to differences in interpretation of a rather unclear report. The highly deferential standard of review requires that this court uphold the agency action so long as it is not arbitrary and capricious, even if the action is not the most reasonable one or the one this court would have reached. *Am. Paper Inst., Inc. v. Am. Elec. Paper Serv. Corp.*, 461 U.S. 402, 422 (1983). Under this standard, deduction from the overall loss claim of two losses that were found to be due to the Bank's negligence was not unreasonable and cannot be considered arbitrary and capricious.

**CONCLUSION**

For the foregoing reasons, plaintiff's Motion for Declaratory Judgment will be DENIED and defendant's Motion for Declaratory Judgment will be GRANTED.

A separate order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, March 26, 2008.